UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| Malachi Kelley, | |
| *On behalf of himself and those similarly situated,* | Case No. |
| Plaintiff, | Judge |
| v. | |
| Stanzel, Inc.; P & Z Carolina Pizza, LLC; Charles H. Zoellers; Robert Stansbury; Daniel B. Patterson; Doe Corporations 1–10; John Doe 1–10 | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Malachi Kelley, on behalf of himself and similarly-situated individuals, brings this action against Defendants Stanzel, Inc.; P & Z Carolina Pizza, LLC; Charles H. Zoellers; Robert Stansbury; Daniel B. Patterson; Doe Corporations 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Kentucky Revised Statutes ("K.R.S.") § 337.010, *et seq.*, Kentucky common law, and for unjust enrichment.

2.    Defendants own and/or operate multiple Papa John's Pizza store locations in Kentucky, Tennessee, and North Carolina ("Defendants' Papa John's Stores").

1

3.      Stanzel, Inc. is currently owned by Papa John's franchise operator Charles H. Zoellers.

4.      Stanzel, Inc. is operated and directed by Charles H. Zoellers and Robert Stansbury.

5.      Charles H. Zoellers and Daniel Patterson are current organizers and members of P & Z Carolina Pizza, LLC.

6.      Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Stores.

7.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and K.R.S. § 337.010, *et seq.* by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

8.      All delivery drivers at the Defendants' Stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

### Jurisdiction and Venue

9.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Kentucky state law claims.

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(3) because Defendant Stanzel, Inc. resides in this district.

## Parties

**Plaintiff**

**Malachi Kelley**

12.     Plaintiff Malachi Kelley is a resident of Kentucky.

13.     Plaintiff was an "employee" of all Defendants as defined in the FLSA and K.R.S. § 337.010, *et seq*.

14.     Plaintiff has given written consent to join this action.

**Defendants**

Defendants' Papa John's Stores are owned and/or operated by a number of entities and individuals, each of whom employed Plaintiff and the Delivery Drivers.

**Stanzel, Inc.**

15.     Defendant Stanzel, Inc. is a domestic corporation organized and existing under the laws of Kentucky and is headquartered in Kentucky with its principal office at PO Box 1525 Corbin, KY 40702.

16.     Upon information and belief, Stanzel, Inc. owns multiple Papa John's Pizza Stores in Kentucky and Tennessee.

17.     Stanzel, Inc. is owned by Charles H. Zoellers.

18.     Stanzel, Inc. is operated and directed by Charles H. Zoellers and Robert Stansbury.

19.     Stanzel, Inc. is a franchisee of Papa John's International, Inc.

20.     Stanzel, Inc. had/has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     Stanzel, Inc. had/has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22.     Stanzel, Inc. maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23.     Stanzel, Inc. was/is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and K.R.S. § 337.010, *et seq.*

24.     At all relevant times, Stanzel, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.     Stanzel, Inc.'s gross revenue exceeds $500,000 per year.

**P & Z Carolina Pizza, LLC**

26.     Defendant P & Z Carolina Pizza, LLC is a domestic limited liability company authorized to do business under the laws of Kentucky and is headquartered in Kentucky with its principal office at PO Box 1626 Corbin, KY 40702.

27.     Upon information and belief, P & Z Carolina Pizza, LLC owns multiple Papa John's Pizza Stores in North Carolina.

28.     Charles H. Zoellers and Daniel Patterson are current organizers and members of P & Z Carolina Pizza, LLC.

29.     P & Z Carolina Pizza, LLC had/has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

4

30.     P & Z Carolina Pizza, LLC has/had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

31.     P & Z Carolina Pizza, LLC maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32.     P & Z Carolina Pizza, LLC was/is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and K.R.S. § 337.010, *et seq*.

33.     P & Z Carolina Pizza, LLC is an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

34.     P & Z Carolina Pizza, LLC's gross revenue exceeds $500,000 per year.

**Charles H. Zoellers**

35.     Charles H. Zoellers is an owner, operator, President, and Director of Stanzel, Inc. and Defendants Papa John's stores.

36.     Charles H. Zoellers is an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC.

37.     Upon information and belief, Charles H. Zoellers has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

38.     Charles H. Zoellers is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and K.R.S. § 337.010, *et seq*. because he owns, operates, and directs the Defendants' Papa John's Stores, serves President and Director of Stanzel, Inc., serves as Organizer and Member of P & Z Carolina Pizza, LLC, ultimately controls

significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately has control over-compensation and reimbursement of employees. 29 U.S.C. § 203(d).

39.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC , Charles H. Zoellers has a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

40.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had control over Defendants' Papa John's Stores' pay policies.

41.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

42.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

43.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

44.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

45.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

46.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

47.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

48.     At all relevant times, by virtue of his role as owner, operator, President, and Director of Stanzel, Inc. and as Owner, Operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Charles H. Zoellers has had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

49.     At all relevant times, Defendants' Papa John's Stores have functioned for Charles H. Zoellers' profit.

50.     At all relevant times, Charles H. Zoellers has had influence over how the Defendants' Papa John's Stores can run more profitably and efficiently.

**Robert Stansbury**

51.     Robert Stansbury is an owner, operator, and Director of Stanzel, Inc. and Defendants Papa John's stores.

52.     Upon information and belief, Robert Stansbury has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

53.     Robert Stansbury is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and K.R.S. § 337.010, *et seq.* because he owns, operates, and directs the Defendants' Papa John's Stores, serves as a Director of Stanzel, Inc., ultimately controls significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately has control over-compensation and reimbursement of employees. 29 U.S.C. § 203(d).

54.     At all relevant times, by virtue of his role as an owner, operator,  and Director of Stanzel, Inc., Robert Stansbury has a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

55.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had control over Defendants' Papa John's Stores' pay policies.

56.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

57.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

58.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

59.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

60.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

61.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

62.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

63.     At all relevant times, by virtue of his role as an owner, operator, and Director of Stanzel, Inc., Robert Stansbury has had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

64. At all relevant times, Defendants' Papa John's Stores have functioned for Robert Stansbury's profit.

65. At all relevant times, Robert Stansbury has had influence over how the Defendants' Papa John's Stores can run more profitably and efficiently.

**Daniel Patterson**

66. Daniel Patterson is an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC and Defendants Papa John's stores.

67. Upon information and belief, Daniel Patterson has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

68. Daniel Patterson is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and K.R.S. § 337.010, *et seq.* because he owns, operates, and directs the Defendants' Papa John's Stores, serves as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, ultimately controls significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

69. At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

70. At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of the P & Z Carolina Pizza, LLC, Daniel Patterson has had control over Defendants' Papa John's Stores' pay policies.

71.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

72.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

73.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

74.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

75.     At all relevant times, by virtue of his role as Organizer and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

76.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

77.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

11

78.     At all relevant times, by virtue of his role as an owner, operator, Organizer, and Member of P & Z Carolina Pizza, LLC, Daniel Patterson has had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

79.     At all relevant times, Defendants' Papa John's Stores have functioned for Daniel Patterson's profit.

80.     At all relevant times, Daniel Patterson has had influence over how the Defendants' Papa John's Stores can run more profitably and efficiently.

**Doe Corporation 1–10**

81.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Papa John's Stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and K.R.S. § 337.010, *et seq*.

82.     Upon information and belief, Stanzel, Inc., P & Z Carolina Pizza, LLC, Charles H. Zoellers, Robert Stansbury, and Daniel B. Patterson own and/or operate, in whole or in part, a number of other entities that make up part of the Defendants' operation.

83.     Upon information and belief, the franchisor, Papa John's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's Stores.

84.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

85.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and K.R.S. § 337.010, *et seq.*

86.     Upon information and belief, the Defendants entered into co-owner relationships with a number of managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and K.R.S. § 337.010, *et seq.*

87.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Class-wide Factual Allegations

88.     During all relevant times, Defendants have operated the Defendants' Papa John's Stores.

89.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Papa John's Stores.

90.     All delivery drivers employed at the Defendants' Papa John's Stores over the last five years have had essentially the same job duties.

91.     The delivery drivers at the Defendants' Papa John's Stores work dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

92.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Papa John's Stores folding boxes, doing dishes, stocking coolers,

mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

93.    Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while delivering Defendants' products to its customers.

94.    Defendants require delivery drivers at the Defendants' Papa John's Stores to provide cars to use while completing deliveries for Defendants.

95.    Defendants require delivery drivers at the Defendants' Papa John's stores to provide cellphones to use while completing deliveries for Defendants.

96.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

97.    Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

98.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

99.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and

registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

100.   Plaintiff and similarly situated delivery drivers received a per-delivery reimbursement payment that is less than the IRS standard business mileage rate.

101.   Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

102.   The Defendants' Papa John's Stores do not track or record the delivery drivers' actual expenses.

103.   The Defendants' Papa John's Stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

104.   The Defendants' Papa John's Stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

105.   The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

106.   The Defendants' Papa John's Stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

107.   The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile registration costs.

108.   The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

15

109.    The Defendants' Papa John's Stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Papa John's Stores.

110.    The Defendants' Papa John's Stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

111.    The Defendants' Papa John's Stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

112.    The Defendants' Papa John's stores do not reimburse the delivery drivers' cellphone expenses.

113.    The Defendants' Pap John's stores do not track or record the delivery drivers' cellphone expenses.

114.    The Defendants' Papa John's Stores do not reasonably approximate the delivery drivers' expenses.

115.    The Defendants' Papa John's Stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

116.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

2017: 53.5 cents/mile
2018: 54.5 cents/mile
2019: 58 cents/mile
2020: 57.5 cents/mile
2021: 56 cents/mile
2022: 58.5 cents/mile

117.    The delivery drivers at the Defendants' Papa John's Stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—e.g., cell phone and data charges.

118.    The delivery drivers at the Defendants' Papa John's Stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

119.    Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

120.    Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

121.    Defendants benefit from the delivery drivers at the Defendants' Papa John's Stores spending time off the clock repairing and maintaining their vehicles.

122.    Defendants benefit from delivery drivers at the Defendants' Papa John's Stores taking on the risk of using their vehicles to drive for Defendants' business.

123.    All Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

124.    Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

125.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Kentucky law.

126.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Papa John's Stores.

17

127.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

128.    Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

129.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

130.    Defendants have willfully failed to pay federal and Kentucky state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Papa John's Stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

### Plaintiff's Individual Factual Allegations

131.    Plaintiff worked at the Defendant's Papa John's store located on Cumberland Falls Highway in Barberville, KY from October 2021 through March 2022.

132.    Plaintiff worked dual jobs. One job where Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

133.    Plaintiff was paid minimum wage minus a tip credit for all hours worked while delivering.

134.    Plaintiff was paid federal minimum wage while working in a non-tipped capacity inside of the store.

135.    A couple of months ago, Plaintiff received a raise to $8.00 per hour while working in a non-tipped capacity inside of the store.

136.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

137.    Plaintiff was required to use his own car to deliver pizzas.

138.    Plaintiff was required to use his own cellphone when delivering pizzas.

139.    Plaintiff was reimbursed $2.00 per delivery.

140.    Plaintiff regularly drove approximately 10 miles per round trip delivery.

141.    As a result, Defendants' reimbursement policy resulted in Plaintiff receiving approximately $.20 per mile on average.

142.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

143.    Plaintiff was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

144.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

145.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

146.     Defendants did not track the actual expenses incurred by Plaintiff.

147.     Defendants did not ask Plaintiff to provide records of cellphone expenses he incurred while delivery pizzas for Defendants.

148.     Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

149.     Defendants did not collect receipts of Plaintiff's cellphone data plan expenses.

150.     Defendants did not reimburse Plaintiff for his cellphone expenses.

151.     Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

152.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

153.     Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

154.     Plaintiff regularly made approximately 2 deliveries per hour during the hours he worked as a delivery driver and drove about 10 miles per delivery, on average.

155.     In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper

measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.36 ($.56 - $.20) per mile. Considering Plaintiff's estimate of about 10 miles per delivery, Defendants under-reimbursed him about $3.60 per delivery ($.36 x 10 miles).

156.   Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

157.   Defendants failed to pay Plaintiff minimum wage as required by law.

158.   Defendants have been unjustly enriched by Plaintiff in that he used his own vehicle and incurred vehicle-related expenses for Defendants' benefit.

159.   Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

160.   Plaintiff brings the First Count on behalf of himself and:

All similarly situated current and former delivery drivers employed at the Defendants' Papa John's Stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

161.   At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

162.    Defendants' unlawful conduct is pursuant to a company policy or practice.

163.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

164.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

165.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

166.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

167.    The FLSA Collective members are readily identifiable and ascertainable.

168.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

169.    Plaintiff brings the Second, Third and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's Stores in the State of Kentucky between the date five years prior to the filing of the original complaint and the date of final judgment in this matter (the "Kentucky Wage Class").

170.    Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

All current and former delivery drivers employed by Defendants at the Defendants' Papa John's Stores in the State of Kentucky between the date five years prior to the filing of the original complaint and the date of final judgment in this matter (the "Kentucky Unjust Enrichment Class") (Combined with the Kentucky Wage Class, the "Rule 23 Classes")

171.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

172.    The number and identity of the Kentucky Wage Class members are ascertainable from Defendants' records.

173.    The number and identity of the Kentucky Unjust Enrichment Class members are ascertainable from Defendants' records.

174.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

175.    All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

176.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

177.    Notice can be provided by means permissible under Rule 23.

178.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

179.    There are more than 50 Rule Kentucky Wage Class members.

180.    There are more than 50 Rule Kentucky Unjust Enrichment Class members

181.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

182.    Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

183.    Plaintiff and the Kentucky Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Kentucky wage law.

184.    Defendants have been unjustly enriched by Plaintiff and all the Kentucky Unjust Enrichment Class members in the same way.

185.    Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

186.    Plaintiff is able to fairly and adequately protect the interests of the Kentucky Wage Class and has no interests antagonistic to the Kentucky Wage Class.

187.    Plaintiff is able to fairly and adequately protect the interests of the Kentucky Unjust Enrichment Class and has no interests antagonistic to the Kentucky Unjust Enrichment Class.

188.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

189.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of

minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

190.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

191.    The Kentucky Wage Class and the Kentucky Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

192.    Common questions of law and fact exist as to the Kentucky Wage Class that predominate over any questions only affecting Plaintiff and the Kentucky Wage Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Kentucky Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

b.  Whether Plaintiff and the Kentucky Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.  Whether Plaintiff and the Kentucky Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants reimbursed Plaintiff and the Kentucky Wage Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiff and the Kentucky Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f.   Whether Defendants properly reimbursed Plaintiff and the Kentucky Wage Class members;

    g.   Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Kentucky Wage Class;

    h.   Whether Plaintiff and the Kentucky Wage Class were actually paid the wage rate they were promised by Defendants;

    i.   The nature and extent of class-wide injury and the measure of damages for those injuries.

193.    In recognition of the services Plaintiff has rendered and will continue to render to the Kentucky Wage Class, Plaintiff will request payment of a service award upon resolution of this action.

194.    Common questions of law and fact exist as to the Kentucky Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Kentucky Unjust Enrichment Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Kentucky Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b.   Whether Plaintiff and the Kentucky Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

    c.   Whether Plaintiff and the Kentucky Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.   Whether Plaintiff and the Kentucky Unjust Enrichment Class conferred a measurable benefit on Defendants;

    e.   Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Kentucky Unjust Enrichment Class providing cars to use to make deliveries;

     f.   How much it would have cost Defendants to operate their business but for Plaintiff and the Kentucky Unjust Enrichment Class providing cars to use to make deliveries;

     g.   Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Kentucky Unjust Enrichment Class; and

     h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

195.    In recognition of the services Plaintiff has rendered and will continue to render to the Kentucky Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

196.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

197.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

198.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

199.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

200.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

201.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

202.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

203.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – K.R.S. § 337.275**
**(On Behalf of Plaintiff and the Kentucky Wage Class)**

204.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

205.    Plaintiff and the Kentucky Wage Class are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

206.    By failing to pay Plaintiff and the Kentucky Wage Class the minimum wage for all hours worked, Defendants have violated K.R.S. § 337.275.

207.    Plaintiff and the members of the Kentucky Wage Class worked in dual jobs—one during which they worked outside the store delivering pizzas, and another during which they worked inside the store completing general tasks.

208.    Defendants paid Plaintiff and the Kentucky Wage Class at or close to minimum wage for all hours worked inside the store.

209.    Defendants required and continue to require Plaintiff and the Kentucky Wage Class to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the Kentucky Wage Class for said expenses.

210.    By the acts and conduct described above, Defendants willfully violated K.R.S. § 337.275 and disregarded the rights of Plaintiff and the Kentucky Wage Class.

211.    Plaintiff and the Kentucky Wage Class have been damaged by Defendants' willful failure to pay minimum wage as required by law.

212.    As a result of Defendants' willful failure to pay Plaintiff and the Kentucky Wage Class the minimum wage, Plaintiff and the Kentucky Wage Class are entitled to unpaid minimum wages, liquidated damages, interest, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – K.R.S. § 337.020**
**(On Behalf of Plaintiff and the Kentucky Wage Class)**

213.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

214.    During all relevant times, Defendants were covered by Kentucky wage and hour law, and Plaintiff and the Kentucky Wage Class were employees within the meaning of Kentucky wage and hour law and were not exempt from its protections.

215.    K.R.S. § 337.020 requires that Defendants pay Plaintiff and the Kentucky Wage Class all wages due on regular paydays "as often as semimonthly".

216.    By failing to pay Plaintiff and the Kentucky Wage Class minimum wage, Defendants have failed to pay them all wages due to them under K.R.S. § 337.010, *et seq*.

217.    Plaintiff and the Kentucky Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

218.    Plaintiff's and the Kentucky Wage Class's entitlement to the wages sought herein is and has been undisputed.

219.    As a result of Defendants' willful violations, Plaintiff and the Kentucky Wage Class are entitled to unpaid wages, liquidated damages, interest, costs, and attorneys' fees.

**Count 4**

**Untimely Withholding of Wages – K.R.S. § 337.060**
**(On Behalf of Plaintiff and the Kentucky Wage Class)**

220.    Plaintiff restates and incorporate the foregoing allegations as if fully rewritten herein.

221.    During all relevant times, Defendants were covered by Kentucky wage and hour law, and Plaintiff and the Kentucky Wage Class were employees within the meaning of Kentucky wage and hour law and were not exempt from its protections.

222.    K.R.S. § 337.060 prohibits Defendants from withholding any portion of wages agreed upon to any employee.

223.    By failing to pay Plaintiff and the Kentucky Wage Class their inside wage rate while working inside the store, Defendants have willfully failed to pay them all wages agreed upon under K.R.S. § 337.060.

224.    As a result of Defendants' willful violation, Plaintiff and the Kentucky Wage Class are entitled to unpaid wages, liquidated damages, interest, costs, and attorneys' fees.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Kentucky Unjust Enrichment Class)**

213.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

214.    The Kentucky Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

215.    Defendants are aware of and have accepted the benefit conferred on them by the Kentucky Unjust Enrichment Class.

216.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Kentucky Unjust Enrichment Class without commensurate compensation.

217.    Plaintiff and the Kentucky Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff Malachi Kelley prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

31

D. Designation of Plaintiff as representative of the Kentucky Wage Class and the Kentucky Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E. An award of unpaid minimum wages and unreimbursed expenses due under K.R.S. § 337.010, *et seq.*

F. Liquidated damages under K.R.S. § 337.385.

G. An award of 10 per cent interest per annum under K.R.S. § 337.990(4).

H. An award of restitution as a result of unjust enrichment to the Kentucky Unjust Enrichment Class.

I. An award of prejudgment and post-judgment interest.

J. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K. Such other legal and equitable relief as the Court deems appropriate.

*/s/ Emily Hubbard*
Andrew R. Biller (Ohio Bar No. 0081452) (*pro hac vice* forthcoming)
Andrew P. Kimble (Ohio Bar No. 0093172) (*pro hac vice* forthcoming)
Emily A. Hubbard (Kentucky Bar No. 97494)
Riley E. Kane Riley E. Kane (Ohio Bar No. 0100141) (pro hac vice forthcoming)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8714
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

### Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Emily Hubbard*
Emily A. Hubbard